UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EUGENE JOSEPH (#171436)

VERSUS                                    CIVIL ACTION

JAMES LEBLANC, ET AL                      NUMBER 13-229-SDD-SCR

**<u>NOTICE</u>**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.
    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, May 7, 2014.

                                     STEPHEN C. RIEDLINGER
                                     UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EUGENE JOSEPH (#171436)

VERSUS                                      CIVIL ACTION

JAMES LEBLANC, ET AL                        NUMBER 13-229-SDD-SCR

**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the defendants' Motion for Partial Summary Judgment. Record document number 28. The motion is opposed.[1]

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana Department of Public Safety and Corrections Secretary James LeBlanc, Warden N. Burl Cain, Asst. Warden Kenneth Norris, Dr. Jason Collins, Dr. Hal McMurdo[2], Dr. Randy Lavespere, emergency medical technician ("EMT") J. R. Hornea, EMT D. White, EMT Brooke Summers, field foreman J. Coleman, Classification Officer Susanne Fairchild, and three unidentified emergency medical technicians. Plaintiff alleged that he suffers from lower back pain and was diagnosed with spondylolysis.

---

[1] Record document numbers 35 and 36. Plaintiff addressed claims in his opposition which were not raised in the complaint. Plaintiff's oppositions to the defendants' motion for summary judgment shall not be treated as an amendment to the complaint.

[2] This defendant was identified as "H. MacMurdo" in the complaint.

Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights.

Defendants[3] moved for summary judgment relying on a statement of undisputed facts, copies of the plaintiff's medical records and the results of Administrative Remedy Procedure ("ARP") LSP-2012-2933.

## I. Factual Allegations

Plaintiff alleged that he has suffered from chronic lower back pain, chronic arthritis, knee and foot pain since 2008. Plaintiff alleged that he experiences muscle spasms and numbness in his legs and foot, swelling and pain in his right knee, and pain in his foot, lower back and pelvis which he attributes to walking on unlevel ground and prolonged walking and standing. Plaintiff alleged that he also experiences discomfort in his lower back, pelvis and hips when sitting, standing, walking, bending and

---

[3] J. R. Hornea, D. White, J. Coleman and the three unidentified John Doe defendants were not served with the summons and complaint and did not participate in the defendants' motion for summary judgment. A notation made in the Remarks section of the Process Receipt and Return Form USM-285 indicated that service was not accepted for J.R. Hornea who was an "unknown person", D. White and J. Coleman because a first name was needed and the three unidentified John Doe defendants. Record document number 19. Nothing in the record indicates that the plaintiff thereafter provided the U.S. Marshal with the correct identity of Hornea, the identities of the three John Doe defendants and the first names of White and Coleman or made any other effort to obtain service on them.

lifting heavy objects.

Plaintiff alleged that he also experiences lower back pain and side pain when he gets in and out of his bed. Plaintiff alleged that he requested a bottom bunk and a medical duty status which prohibits work in the agricultural fields.

Plaintiff alleged that in 2010, x-rays were taken of his back and knees which showed that his L-5 disc slipped and that his vertebrae is off-set, causing his spine to press on his sciatic nerve.

Plaintiff alleged that in May 2011, he was taken to a clinic in Baton Rouge to undergo an MRI of his legs and back. Plaintiff alleged that the results indicated that he has spondylolysis with grade 1 spondylolisthesis at the L-5 SI level and secondary degenerative changes. Plaintiff alleged that sometime thereafter, Dr. McMurdo conducted a follow-up examination during which he advised him regarding the MRI test results. Plaintiff alleged that an appointment with a neurologist was scheduled.

Plaintiff alleged that on September 10, 2012, he filed an ARP against medical personnel complaining that his medical care was inadequate.

Plaintiff alleged that he has not been examined by a medical specialist outside the prison since May 2011.

Plaintiff alleged that unidentified emergency medical technicians ("EMT") failed to properly assess his condition, denied

3

him access to the hospital and examination by a qualified doctor, and delayed and denied him access to medical care. Plaintiff alleged that Dr. McMurdo, Dr. Lavespere, Dr. Collins and Warden Norris failed to intervene on his behalf and prevent the delay and denial of access to proper medical treatment. Plaintiff alleged that Dr. Collins and Warden Norris denied him adequate medical treatment when they failed to provide him with a walking stick, a medical duty status which prohibited work in the agricultural fields, a bottom bunk and surgery.

Plaintiff alleged that Warden Cain and Secretary LeBlanc denied his request for administrative remedies even though they were aware of his condition.

Plaintiff alleged that officer Fairchild failed to grant his request to be reassigned to a suitable job consistent with his medical condition.

## II. Applicable Law and Analysis

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation,

4

unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

**C. Prescription**

Defendants moved for summary judgment on the ground that any claim which arose prior to September 28, 2012 is prescribed.

It is well settled that in § 1983 cases, federal courts look to the most consonant statute of limitations of the forum state. *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573 (1989); *Kitrell v. City of Rockwall*, 526 F.2d 715, 716 (5th Cir.), *cert. denied*, 426 U.S. 925, 96 S.Ct. 2636 (1976). For § 1983 cases brought in Louisiana federal courts, the appropriate statute of limitations is one year. Louisiana Civil Code Article 3492; *Elzy v. Roberson*, 868 F.2d 793 (5th Cir. 1989); *Washington v. Breaux*, 782 F.2d 553 (5th Cir. 1986); *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir. 1977). Plaintiff signed his complaint on March 28, 2013 but he did not submit it for filing until April 17, 2013. Ordinarily, any claim plaintiff had against these defendants regarding acts which occurred prior to April 17, 2012, have prescribed.

However, the holding in *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999), affects this court's decision. In *Harris*, the United

States Court of Appeal for the Fifth Circuit concluded that the pendency of properly filed ARP proceedings will toll the running of the one-year limitations period for prisoners' claims in this state.

Plaintiff signed ARP LSP-2012-2933 on September 10, 2012 and it was accepted into the two step procedure on September 14, 2012.[4] Plaintiff's ARP was subsequently denied at the Second Step on December 28, 2012.[5] Accordingly, this ARP had the effect of tolling the limitations period applicable to the plaintiff's claims between September 10, 2012 and December 28, 2012, for a total of 109 days.

Therefore, excluding the 109 day period during which the limitations period was tolled, any claim the plaintiff had against these defendants regarding acts which occurred prior to December 30, 2011, has prescribed.

**C. Failure To Exhaust Available Administrative Remedies**

Defendants moved for summary judgment on the ground that the plaintiff failed to exhaust available administrative remedies regarding his claims against defendants Secretary LeBlanc, Warden Cain, Asst. Warden Norris, Dr. Lavespere, Dr. McMurdo, officer Fairchild and EMT Summers.

---

[4] Record document number 28-3, Exhibit A, pp. 3-8.

[5] *Id*. at 3, 15.

6

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998), *abrogated in part* by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the administrative process by flouting an agency's procedural rules.

7

*Id.*, 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act (PLRA) does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218, 127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id*.

Defendants argued that the plaintiff failed to exhaust available administrative remedies regarding his claims against defendants Secretary LeBlanc, Warden Cain, Asst. Warden Norris, Dr. Lavespere, Dr. McMurdo, corrections officer Fairchild and EMT Summers. Plaintiff asserted in his complaint that he exhausted ARP

LSP-2012-2933 regarding the claims raised in the complaint.[6]

The summary judgment evidence showed that in ARP LSP-2012-2933 the plaintiff complained that Dr. Collins and EMTs were deliberately indifferent to his serious medical needs. Specifically, the plaintiff complained that on September 4, 2012, he wrote Dr. Collins a letter requesting a medical duty status which prohibited him from performing work in the agricultural fields because of lower back, hip and leg pain.

Plaintiff further complained that he filed sick call requests on September 9 and 10, 2012 and on September 10, he also declared himself a medical emergency while in the agricultural fields. Plaintiff complained that on each of these occasions, the unidentified medical personnel failed to ask pertinent questions in order to properly treat him. Plaintiff requested that all EMTs who denied him access to proper medical care be disciplined, that he be prescribed physical therapy and crutches or a cane, and that he be issued a medical duty status prohibiting his assignment to work in the agricultural fields.

As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis

---

[6] Record document number 1, Complaint, p. 3, § II, ¶ C.1.

of the suit.

The summary judgment evidence showed that the plaintiff's ARP failed to provide prison administrators with a fair opportunity to address any of the plaintiff's claims other than the plaintiff's claim that Dr. Collins and the EMTs were deliberately indifferent to the plaintiff's health when Dr. Collins failed to issue the plaintiff a medical duty status and the unidentified EMTs denied him access to proper medical treatment on September 9 and 10, 2012.

Plaintiff failed to exhaust available administrative remedies regarding his claims against Secretary LeBlanc, Warden Cain, Asst. Warden Norris, Dr. Lavespere, Dr. McMurdo, and officer Fairchild as required by 42 U.S.C. § 1997e(a).

**C. Deliberate Indifference**

Plaintiff alleged that Dr. Collins and EMT Summers were deliberately indifferent to his serious medical needs. Specifically, the plaintiff alleged that Dr. Collins failed to issue him a medical duty status which prohibited him from being required to perform work in the agricultural fields. In addition, the plaintiff alleged that EMT Summers denied him adequate medical treatment on September 9 and 10, 2012 when she failed to properly assess his condition.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a

10

substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not give rise to a Section 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

Plaintiff's medical records showed that on January 8, 2011, x-rays of the anterior-posterior ("AP") and lateral lumbar spine were taken.[7] The radiologist report indicated that there was probable bilateral spondylolysis at the L5/S1 level with questionable very

---

[7] Record document number 27, sealed medical records, p. 18.

minimal first degree spondylolisthesis at this level.[8]

Plaintiff's medical records showed that on September 29, 2011, a request for consultation by neurology was issued seeking an evaluation of the plaintiff's low back pain which radiates to right foot.[9]

Plaintiff's medical records showed that on January 12, 2012, the plaintiff was examined at the R.E. Barrow, Jr. Treatment Center Physician's Clinic for complaints of lower back pain.[10] Plaintiff complained that the medications were not relieving his pain.[11] Plaintiff's medications were modified, the plaintiff's temporary medical duty status was extended for two months and a follow-up appointment was scheduled.[12]

Plaintiff's medical records showed that on February 21, 2012, the plaintiff's temporary medical duty status was extended for two months and a bottom bunk limitation was added.[13]

Plaintiff's medical records showed that on April 12, 2012, the

---

[8] *Id.*

[9] *Id.* at 17.

[10] *Id.* at 16.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 15.

plaintiff was evaluated at the Neurology Clinic.[14] A lumbar CT scan was ordered and a medical duty status of regular duty with restrictions was recommended and subsequently issued.[15] The restrictions included no lifting greater than 10 pounds, no prolonged walking, no prolonged standing, no sports, no hobby craft and no rodeo for six months.[16]

Plaintiff's medical records showed that on May 7, 2012, a CT scan of the lumbar spine was performed at the Earl K. Long Medical Center.[17] The results indicated that there is spondylolysis with grade 1 spondylolisthesis at the L5-S1 level and secondary degenerative changes were noted.[18] Plaintiff's medical records showed that a follow-up appointment scheduled on May 11, 2012 was rescheduled because of a Main Prison callout.[19]

Plaintiff's medical records showed that the plaintiff was examined at the Physician's Clinic on June 11, 2012 for chronic low

---

[14] *Id*. at 13.

[15] *Id*.

[16] *Id*.

[17] *Id*. at 12.

[18] *Id*.

[19] *Id*. at 9.

back pain.[20]  Plaintiff's medications were refilled.[21]

Plaintiff's medical records showed that on August 27, 2012, the plaintiff requested sick call and was seen by an EMT.[22]  At the time of the examination the plaintiff voiced no complaints and there were no signs of trauma.[23]

Plaintiff's medical records showed that on September 5, 2012, the plaintiff declared himself a medical emergency for complaints of back pain.[24]  Plaintiff had difficulty getting out of bed, was experiencing muscle spasms and could not bend over or stand erect.[25]  An ambulance was dispatched.[26]  Plaintiff was monitored and examination findings were reported to Dr. Lavespere who ordered medications and no transport.[27]

Plaintiff's medical records showed that several hours later the plaintiff made sick call complaining of low back pain, muscle spasms, an inability to walk, stand, bend or twist and pain in his

---

[20] *Id*. at 7.

[21] *Id*.

[22] *Id*. at 6.

[23] *Id*.

[24] *Id*. at 5.

[25] *Id*.

[26] *Id*.

[27] *Id*. at 4.

14

legs.[28] Plaintiff was issued bed rest for three days and instructed to keep his scheduled appointment.[29]

Plaintiff's medical records showed that on September 10, 2012, the plaintiff declared himself a medical emergency.[30] Plaintiff complained that his back will start hurting if he goes into the agricultural fields to work.[31] Plaintiff was examined and his medical duty status was reviewed.[32]

Plaintiff's medical records showed that EMT Summers did not examine the plaintiff on September 5 or September 10.

A careful review of the plaintiff's medical records reveals no evidence that Dr. Collins or EMT Summers was deliberately indifferent to the plaintiff's medical needs. Plaintiff's disagreement regarding which limitations should have been included in his duty status do not rise to the level of a constitutional violation.

**D. Supplemental Jurisdiction**

Plaintiff sought to invoke the supplemental jurisdiction of this court. District courts may decline to exercise supplemental

---

[28] *Id*. at 3.

[29] *Id*.

[30] *Id*. at 2.

[31] *Id*.

[32] *Id*.

jurisdiction over a claim if the district court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motion for Partial Summary Judgment be granted and this action be dismissed without prejudice to any state law claim.  It is further recommended that the claims against J. R. Hornea, D. White, J. Coleman and the three unidentified John Doe defendants be dismissed for failure to prosecute pursuant to Rule 4(m), Fed.R.Civ.P.

Baton Rouge, Louisiana, May 7, 2014.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE